**\*NOT FOR PUBLICATON\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

REZA FARZAN,

        Appellant,

v.

BAYVIEW LOAN SERVICING, LLC., et al.,

        Appellees.

Civil Action No. 3:20-cv-03330-FLW

**OPINION**

**WOLFSON, Chief Judge:**

      This matter arises out of a state foreclosure action and related proceedings in the United States Bankruptcy Court for the District of New Jersey ("USBC"). After petitioning for Chapter 13 bankruptcy, *pro se* Plaintiff Reva Farzan filed an Adversary Complaint against Bayview Loan Servicing, LLC, its law firm Schiller, Knapp, Lefkowitz, & Hertzal LLP, and Samantha Dickie, a notary (collectively, "Defendants"). Farzan alleged that Defendants forged various documents relating to his mortgage. The USBC dismissed Farzan's Adversary Complaint under the *Rooker-Feldman* doctrine, holding that the lower federal courts cannot hear cases that are essentially appeals from state court judgments. The question on appeal is whether that dismissal was proper.[1] For the following reasons, the Court **AFFIRMS** the USBC's Order granting Defendants' Motion to Dismiss.

    **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

---

[1] In the alternative, Defendants move to dismiss for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6). *See* Def. Br. II, at 14, 29-32. Because I decide this appeal on subject matter jurisdiction grounds, I need not address that issue.

Because of the complicated and lengthy procedural history in this case, but the parties' narrow dispute on appeal, the Court recounts only certain facts it deems relevant.[2] Farzan executed a mortgage for the property located at 23 Twin Terrace, Holmdel, New Jersey, with American Mortgage Network, Inc., on February 14, 2005, in the amount of $359,650. In 2009, Mortgage Electronic Registration Systems, Inc., a nominee of American Mortgage, assigned the note to J.P. Morgan Chase, which then assigned it to Bayview in 2014. Bayview and Farzan executed a loan modification in 2015. Still, the loan went into default, and in 2016, Bayview initiated a foreclose action in Superior Court, Monmouth County, Chancery Division. *See* Def. Br. II, Ex. A.

Farzan vigorously contested the foreclosure action. In his state court Answer, he contended that the assignments were "fraudulent," the signatures on them were forged, the signatories lacked the authority to execute them in any event, Bayview could not foreclose because it did not possess the original mortgage note, and he never agreed to the modification. *Id.*, Ex. B., at 3, 6, 14-16. Bayview moved for summary judgment in January 2017, which the court granted, notwithstanding the fact that J.P. Morgan Chase lost the note. *Id.*, Exs. C-E. Then, for the better part of two years, Farzan filed numerous appeals, dismissal motions, removal motions, and motions for a stay, *id.*, Exs. G-H, as well as a separate federal action against J.P. Morgan Chase,[3] *id.*, Exs. I-J, all of which rehashed the contentions in his Answer. None was successful. The state court entered final judgment on September 3, 2019. *Id.*, Ex. F.

---

[2]   A more detailed factual and procedural history can be found in the USBC's Opinion and Order granting stay relief to Bayview and denying Farzan's motion to disallow Bayview's claim. *See In re Farzan*, No. 19-29256, 2020 WL 2769046, at *1-4 (Bankr. D.N.J. May 20, 2020).

[3]   The Hon. Michael A. Shipp, U.S.D.J., dismissed the action against J.P. Morgan Chase under the *Rooker-Feldman* doctrine.

On October 10, 2019, before the state court deadline to appeal the judgment, Farzan filed for Chapter 13 bankruptcy. *See* Case No. 19-29256, ECF No. 1. In connection with that petition, on November 4, 2019, he filed an Adversary Complaint challenging the authenticity of the 2009 and 2014 assignments and the 2015 loan modification. Def. Br. II, Ex. K; *see* Case No. 19-02228, ECF No. 1. In short, as Farzan has maintained since the beginning, Bayview has no standing to foreclose because of the allegedly forged or fraudulent documents, which he claims he never signed, and he has no obligation to pay the mortgage or judgment. Bayview moved to dismiss.[4]

In a hearing on January 28, 2020, Farzan admitted that he had already litigated the foreclosure in state court, *see* Case No. 20-03330, ECF No. 2, Ex. 3 (Jan. 28 Hearing), at T4:11-13, and did not have an appeal pending there, *id.* at T3:21-24, but nevertheless was "disputing" Bayview's "standing to foreclose." *Id.* at T6:20-22. The USBC explained that "the State court has made a decision on that already," which "is not for me to re-review." *Id.* at T7:1-12. Farzan responded that the *Rooker-Feldman* doctrine "does not apply when there's a fraud," *id.* at T7:13-16, but the USBC noted that "the State court Judge found that there was no fraud . . . . [s]o, [the Court] can't revisit that" either. *Id.* at T7:17-20. Farzan then alleged forgery, but the USBC noted once again that Farzan "brought all that up to the State court judge." *Id.* at T8:12-16. Accordingly, in an oral decision, the USBC "dismiss[ed] the complaint . . . based on . . . the *Rooker-Feldman*

---

4   Since *Rooker-Feldman* concerns the subject matter jurisdiction of the lower federal courts, Fed. R. Civ. P. 12(b)(1) governs Defendants' dismissal motion and Farzan, as the party asserting jurisdiction, bears the burden of establishing that a federal court has authority to hear his Adversary Complaint. *See Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993). Likewise, because *Rooker-Feldman* is a facial attack on jurisdiction rather than a factual one, *see In re JOL Advisors, Inc.*, No. 15-7912, 2017 WL 772912, at *7 (D.N.J. Feb. 28, 2017); *Frame v. Lowe*, No. 09-2673, 2010 WL 503024, at *5-6 (D.N.J. Feb. 8, 2010); *In re Farrington*, No. 17-26505, 2019 WL 1149881, at *4 (D.N.J. Mar. 11, 2019), I must consider the allegations in the Adversary Complaint in the light most favorable to Farzan. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) ("The facial attack does offer similar safeguards to the plaintiff [as a 12(b)(6) motion]: the court must consider the allegations of the complaint as true.").

doctrine that says that [federal courts] can't do anything about facts and issues that were presented before a State court that the State court has decided already."[5] *Id.* at T12:22-13:1.

Unsatisfied with the outcome, Farzan appealed. The question is whether *Rooker-Feldman* bars the USBC from exercising subject matter jurisdiction over the claims in Farzan's Adversary Complaint.[6] Farzan insists the answer is no for reasons which are difficult to discern, but which seem to center on whether there is actually a final judgment in the state court foreclosure action and whether *Rooker-Feldman* exempts allegations of fraud. Defendants contend that the USBC "properly concluded that it lack[ed] jurisdiction" because "all of [Farzan's] claims are inextricably tied to the underlying foreclosure proceeding and either were, or could have been litigated in that action," Def. Br. I, at 9, and as such, constitute "a collateral attack on the state court [judgment]." Def. Br. II, at 14.

Since Farzan filed his appeal, two important events have occurred in the underlying bankruptcy proceedings. First, the USBC granted stay relief to Bayview, which enabled it to commence foreclosure proceedings. *See In re Farzan*, No. 19-29256, 2020 WL 2769046, at *10-11 (Bankr. D.N.J. May 20, 2020). Farzan appealed that decision, but I dismissed it on October 20, 2020, for failure to prosecute. *See* ECF No. 87; *In re New Century TRS Holdings, Inc.*, 619 Fed. App'x. 46, 48 (3d Cir. 2015) (finding that a court, "in its discretion, may dismiss a bankruptcy appeal [on such grounds]"). Second, the USBC issued an Order confirming Farzan's Modified

---

5 Alternatively, the USBC noted that the abstention doctrine bars Farzan's Adversary Complaint. *See, e.g.*, Case No. 20-03330, ECF No. 2, Ex. 3 (Jan. 28 hearing), at T7:8-12 ("[T]he State court is where you should be."); *id.* at T12:23-24 ("I'm dismissing the complaint against Bayview based on the abstention doctrine and *Rooker-Feldman*.").

6 Because I resolve this matter under *Rooker-Feldman*, I do not reach the various other arguments advanced by Defendants, such as abstention, New Jersey's entire controversy doctrine, which broadly encompasses principles of claim preclusion, and collateral estoppel. *See* Def. Br. II, at 20-28.

Chapter 13 Plan on July 16, 2020. *See* Case No. 19-29256, ECF No. 84. That Order provides that Bayview "will be paid outside of the [] Plan." *Id.* at 3.

## II. LEGAL STANDARD

This Court has jurisdiction under 28 U.S.C. § 158(a). "[T]he nature of the issues presented on appeal" determines the "proper standard of review." *In re Beers*, No. 09-1666, 2009 WL 4282270, at *3 (D.N.J. Nov. 30, 2009). I review factual findings for clear error, *Am. Flint Glass Workers union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999), exercise of discretion for abuse thereof, *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005), and conclusions of law *de novo*. *Mellon Bank, N.A. v. Metro Common's, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991).

There does not appear to be a factual dispute here. Instead, Farzan objects to the legal conclusion reached by the USBC in granting Defendants' Motion to Dismiss—namely, that the *Rooker-Feldman* doctrine bars subject matter jurisdiction. I review that *de novo. See In re JOL Advisors, Inc.*, No. 15-7912, 2017 WL 772912, at *7 (D.N.J. Feb. 28, 2017) (applying *de novo* review when a bankruptcy court granted a motion to dismiss); *In re Farrington*, No. 17-26505, 2019 WL 1149881, at *3 (D.N.J. Mar. 11, 2019) (applying *de* novo review when a bankruptcy court invoked *Rooker-Feldman*). Where a court lacks subject matter jurisdiction under *Rooker-Feldman*, as here, dismissal is appropriate. *Jacobsen v. Citi Mortg. Inc.*, No. 17-1555, 2017 WL 3877848, at *1 (D.N.J. Sept. 5, 2017), *aff'd sub nom.*, 715 Fed. App'x. 222 (3d Cir. 2018).

## III. DISCUSSION

The *Rooker-Feldman* doctrine "prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered

before the district court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006). It is implicated when, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996). It applies "equally to federal bankruptcy courts." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2006); *In re Knapper*, 407 F.3d 573, 582 (3d Cir. 2005). A federal court lacks subject matter jurisdiction pursuant to *Rooker-Feldman* when "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167-69 (3d Cir. 2010) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005)).

 A. <u>Farzan Lost in State Court and Judgment Was Rendered Before This Suit</u>

 The first and third *Rooker-Feldman* elements are satisfied in this case. Farzan lost the foreclosure action at summary judgment in January 2017, the state court entered final judgment in September 2019, Farzan did not file his Chapter 13 petition until October 2019, and he did not file the present Adversary Complaint until November 2019. *Accord In re Farrington*, 2019 WL 1149881, at *4 ("In or around May 2017, Appellant was the losing party in the Foreclosure Action in the Superior Court of New Jersey. Appellant did not file the Bankruptcy Action until August 2017 and did not file her Adversary Complaint in the Bankruptcy Court until December 2017, *i.e.*, several months after the Superior Court entered final judgment against [her].").

 Farzan insists that "judgment" was not actually "rendered" before he filed his Adversary Complaint because he may still appeal in state court. *See* Pl. Br., at 14 ("The alleged final judgment

6

order of 9/3/2019 has not been affirmed by the Supreme Court of NJ."); *id.* at 10-11 ("The case has not been in the NJ Appellate Division. The case has not been in the Supreme Court of NJ. Judge Gravelle ignored that."). As a rule, a *Rooker-Feldman* judgment obtains when state proceedings have ended. State proceedings are deemed to end in three situations: "the highest start court in which review is available has affirmed . . . and there is nothing left to be resolved," the "state action has reached a point where neither party seeks further action," for example when a party voluntary terminates litigation or lets the appeals period expire, or all of the federal questions are decided even if state issues remain. *Malhan v. Sec'y of State*, 938 F.3d 453, 459-61 (3d Cir. 2019). Farzan invokes the first situation, which tracks the final judgment rule governing the Supreme Court's appellate jurisdiction. *Id.*; *Federacion De Meastros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d at 17, 24, n.10 (1st Cir. 2005) (observing same). Because he may still appeal, Farzan claims, state proceedings have not ended, "the highest state court in which review is available" has not "affirmed," and there is no judgment in the sense of *Rooker-Feldman*.

Farzan is incorrect. To begin, although "appeals from final judgments of courts shall be filed within 45 days," N.J. Ct. R. 2:4-1, a window which Farzan missed long ago, 11 U.S.C. § 362(a) automatically stays all judicial and foreclosure proceedings against a debtor who files for bankruptcy, and Farzan filed his Chapter 13 petition at the eleventh hour, just before the deadline to appeal the September 2019 judgment, presumably tolling whatever time remained in the appeals period. *See, e.g.*, *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) (requiring courts to read § 362(a) "to stay all appeals in proceedings that were originally brought against the debtor, regardless of whether the debtor is the appellant or appellee"); *Lambert v. Blackwell*, 387 F.3d 210, 240 n.25 (3d Cir. 2004) ("[A]n automatic stay

7

obviates the state court's jurisdiction and renders [any further] decision void *ab initio*."); *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007) (collecting cases holding that "actions taken in violation of [a] stay are void").

Critically, however, the USBC granted stay relief to Bayview on May 27, 2020, *see* 11 U.S.C. 362(d)(1), allowing Bayview to proceed with foreclosure and/or collect on the state court judgment. *In re Farzan*, 2020 WL 2769046, at *10-11 (finding significant prejudice to Bayview and holding that "Farzan may go to the State Court to pursue his appellate rights there," which "is in a better position to evaluate . . . success on the merits, as th[is] matter primarily implicates state law"). The USBC did not stay its decision pending appeal. *Id.* at *10 (writing that "the State Court has its own provisions for stay pending appeal," which Farzan may invoke, and that "[o]ver the course of the months or years that his [many] appeals are pending, he will continue to reside in the Property while making no payments to Bayview," which is "inequitable"). Farzan attempted to appeal, but I dismissed it. *See* Case No. 19-29256, ECF No. 87; *supra*.

As a result, the state court action resumed as soon as the USBC lifted the stay, and Farzan's remaining time to appeal the judgment began to run at that point. *See, e.g.*, *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997) (upholding stay relief to enable a creditor to appeal in state court, and citing *Rooker-Feldman*); *In re Mager*, 614 B.R. 504, 511 (Bankr. E.D. Pa. 2020) (granting stay relief and permitting further "proceeding[s] in the pending state court actions"); *In re Schaffer*, 597 B.R. 777, 794 (Bankr. E.D. Pa. 2019) (granting stay relief and permitting "the Movants to resume, and liquidate, their claims against the Debtor in the State Court"); *In re Lehigh Valley Properties, Inc.*, 482 B.R. 127, 131-32 (Bankr. E.D. Pa. 2012) (granting stay relief "to allow the litigation to proceed in the state court," because *Rooker-Feldman* "quite simply and equally clearly[] prohibits me from [reviewing the state court decision]"); *In re Pedro*, No. 11-21071, 2011 WL 3741504, at *7 (Bankr.

8

E.D. Pa. 2011) ("The stay prevents the [] claim from finally being heard by the most logical, practical court to hear it—the state court."); *In re Dunlop*, 378 B.R. 85, 93 (Bankr. E.D. Pa. 2007) (relying on *Rooker-Feldman* to terminate a stay because the state court already "upheld the . . . foreclosure sale"); *Matter of Highway Truck Drivers and Helpers Local Union 107*, 98 B.R. 698, 705 (E.D. Pa. 1989) (affirming stay relief on the grounds that state court appeal was debtor's "only vehicle to attack the adverse judgment"); *Metz v. Poughkeepsie Sav. Bank*, 165 B.R. 769, 771 (Bankr. E.D.N.Y. 1994) (granting stay relief to allow appeal of state court judgment); *In re Cohoes Industrial Terminal, Inc.*, 70 B.R. 214 (S.D.N.Y. 1986) (granting stay relief when debtor's right to possession had been extinguished pre-bankruptcy by state court order), *aff'd*, 831 F.2d 283 (2d Cir. 1987); *see also* H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977) (stating, in the context of stay relief, that "[i]t will often be more appropriate to permit proceedings to continue in their place of origin").

There is no indication that Farzan ever appealed the final judgment in state court after the USBC granted stay relief, much less within whatever time remained under N.J. Ct. R. 2:4-1.[7] Indeed, in his initial brief in this matter, filed on June 1, 2020, Farzan acknowledged that the USBC had already lifted the stay, but stated that "I have not filed any other appeal or petition for review." Pl. Br., at 10. Then, in his reply brief, filed on July 16, 2020, the same day the USBC confirmed his Modified Chapter 13 Plan, Farzan repeatedly referenced the stay relief order without ever stating that he appealed the final judgment in state court. *See, e.g.*, Pl. Rep. Br., at 3-4, 23 ("I have appealed the orders of 5/27/20 [to this Court]."). The foreclosure judgment is final—and no longer

---

[7] Also relevant here: both the Appellate Division and New Jersey Supreme Court have denied appeals relating to the 2017 summary judgment order. Pl. Rep. Br., at 13-14, 16 ("I filed interlocutory appeals in the NJ Appellate Division to complain. They denied me . . . . I filed interlocutory appeals to the Supreme Court of NJ; they denied my complaints."); *see also* Case No. 20-03330, ECF No. 2, Ex. 3 (Jan. 28 Hearing), at T3:21-24 ("[D]o you have an appeal pending in the State court?" "No.").

9

reviewable—to that extent. *Accord Erlandson v. Northglenn Mun. Court*, 528 F.3d 785, 788 n.3 (10th Cir. 2008) (finding that a state court proceeding was final under *Rooker-Feldman* once the Colorado Supreme Court denied plaintiff's certiorari petition).

Alternatively, after the USBC confirmed his Modified Chapter 13 Plan on July 16, 2020, Farzan did not appeal it or move for a stay pending appeal, which independently terminated the automatic stay and started the clock on the appeals period in state court. *See, e.g.*, *In re Ernst*, 45 B.R. 700, 702-03 (Bankr. D. Minn. 1985) (holding that a confirmed plan "automatically terminated" a stay, even if the USBC "retained jurisdiction," thus allowing "a party to seek his remedy . . . under the plan in a state court having jurisdiction"); *see also* 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."); *In re Simpson,* 240 B.R. 559 (8th Cir. BAP 1999) (mooting an appeal from an order denying a motion to terminate an automatic stay upon confirmation plan); *In re Simons*, 113 B.R. 942, 949 (Bankr. W.D. Tex. 1990) (explaining that a confirmed plan supersedes earlier orders).

Because Farzan's appeals period began to run again when the USBC granted stay relief or confirmed his Modified Chapter 13 Plan, and hence ended in August 2020 at the latest,[8] he may

---

8   Although the USBC made its *Rooker-Feldman* determination in January 2020, but did not grant stay relief or confirm Farzan's plan until later, that timeline does not control on appeal, because I have to assess subject matter jurisdiction at every stage of the litigation. *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also of the lower courts in a case under review.") (citation and internal quotation marks omitted); *Mansfield, Coldwater & Lake Mich. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884) (stating that a challenge to a federal court's jurisdiction may be made at any stage, and the court should raise it *sua sponte*). At this point, because the state court appeals period has expired, judgment has been rendered in the sense of *Rooker-Feldman*. In any event, even if *Rooker-Feldman* did not previously apply, *res judicata*, collateral estoppel, and/or abstention would have, as the USBC noted in the hearing on January 28, 2020. *Supra*, note 5; *see In re Randall*, 358 B.R. 145, 164-66 (Bankr. E.D. Pa. 2006) (applying *res*

no longer seek further review in state court, there is a "'final judgment or decree rendered by the highest court of a State in which a decision could be had'" in the sense of 28 U.S.C. § 1257, *Malhan*, 938 F.3d at 459 (quoting *Federacion*, 410 F.3d at 24), and judgment has been "rendered" for *Rooker-Feldman* purposes. The first and third *Rooker-Feldman* elements are, in turn, satisfied.

B. <u>Farzan Complains of an Injury from the State Judgment and Seeks to Overturn It</u>

The second and fourth *Rooker-Feldman* elements are "closely related" and "key" to determining "whether a federal suit presents an independent, non-barred claim." *Great W. Mining*, 615 F.3d at 166, 168. Because Farzan complains that he is injured by his obligation to pay Bayview, since he is not liable on the mortgage and Bayview allegedly procured the note by fraud, and through his Adversary Complaint, asks this Court to declare that Bayview has no claim against him and that the judgment is erroneous, these elements are also satisfied here.

The second element is viewed, primarily, as "an inquiry into the source of the plaintiff's injury." *Great W. Mining*, 615 F.3d at 166. Farzan alleges that Bayview had no right to foreclose on his home because it had no right to collect on the note, and it had no right to collect on the note because every link in the chain of assignments is fraudulent, including apparently the documents he signed modifying the loan in 2015. *See, e.g.*, Pl. Rep. Br., at 24 (describing "four forged documents"). Hence, in Farzan's view, Bayview has no standing to foreclosure, he has no liability on the mortgage, and there is no legitimate basis for the judgment. Even when viewed in the light most favorable to Farzan, it is "abundantly clear" that Farzan "attacks" the judgment itself, which he seeks not to pay. *See Gage v. Wells Fargo Bank, NA AS*, 521 Fed. App'x. 49, 51 (3d Cir. 2013)

---

*judicata* to bar a claim where *Rooker-Feldman* did not); *In re Assante*, 470 B.R. 707, 712 (S.D.N.Y. 2012) (applying collateral estoppel to same effect); *Ruffolo v. HSBC Bank USA, N.A.*, 2014 WL 4979699 (D.N.J. Oct. 3, 2014) (applying abstention doctrine to bar a federal challenge to a state court foreclosure); *St. Clair v. Wertzberger*, 637 F. Supp. 2d 251, 255 (D.N.J. 2009) (same); *DiPietro v. Landis Title Co.*, No. 11-5110, 2012 WL 2116404 (D.N.J. June 11, 2012) (same).

(concluding same); *McMahon v. Washington State Bank*, No. 05-122, 2005 WL 1648204, at *2 (W.D. Wis. 2005) ("[T]he requested remedy, avoidance of the [September 2019 order], reveals that the injury stems from the foreclosure and the essence of the claim is to overturn that state court judgment."). It is further clear that the state court heard, litigated, and rejected precisely these claims, which Farzan now recycles in the Adversary Complaint. *See In re Kajla*, No. 18-22208, 2019 WL 6456120, at *3 (D.N.J. Nov. 30, 2019) ("[Plaintiff] re-asserted the same, previously rejected, claims of Appellees' allegedly fraudulent conduct in his Adversary Complaint."). Regardless, Farzan's claims cannot be separated from the judgment because they are predicated on the belief that the judgment is wrong. *See Diehl v. Connell*, 382 Fed. App'x. 127, 129 (3d Cir. 2010) (applying *Rooker-Feldman* where "to grant relief . . . [the court] would be required to find that the state court judgment is erroneous."); *In re Knapper*, 407 F.3d at 580 (applying *Rooker-Feldman* where claims are "inextricably linked" with state court judgment).

Still, Farzan argues, because Defendants procured the judgment through fraud, his Adversary Complaint asserts an "independent claim" not barred by *Rooker-Feldman*. This argument is not entirely without merit. *See, e.g.*, *Frame v. Lowe*, No. 09-2673, 2010 WL 503024, at *6 (D.N.J. Feb. 8, 2010) (accepting a similar argument, albeit under different facts). It is nevertheless unpersuasive and unavailing here. First, as the USBC pointed out, Farzan made an identical argument in state court, many times over, unsuccessfully. *See In re Kajla*, 2019 WL 6456120, at *3 (applying *Rooker-Feldman* despite plaintiff's repeated claims "contest[ing] the validity of certain assignments of the loan documents"); *Lawson v. Deutsche Bank Nat'l Trust Co.*, No. 18-14855, 2019 WL 4386746, at *3-4 (D.N.J. Sept. 13, 2019) (rejecting plaintiff's repeated claims that defendant lacked standing to foreclose "due to fraud in the assignment process"); *In re Ward*, 423 B.R. 22, 28 (Bankr. E.D.N.Y. 2010) ("[T]he *Rooker-Feldman* doctrine [] appl[ied] . . .

even though the party argued that the judgment was procured by fraud."); *Estate of Keys v. Union Planters Bank, N.A.*, 578 F. Supp. 2d 629, 637 (S.D.N.Y. 2008) (same).

Second, the Third Circuit has repeatedly and explicitly held, in the foreclosure context, that a plaintiff cannot "evade *Rooker-Feldman* by arguing on appeal that he was not injured by the foreclosure judgment, but rather by [defendant's] purportedly fraudulent actions." *Gage*, 521 Fed. App'x. at 50-51 (rejecting plaintiff's claim that defendant "had no right to foreclosure on the property and therefore committed 'criminal acts'"); *Mann v. Nat'l City Bank of Ind.*, 471 Fed. App'x. 101, 105 (3d Cir. 2012) ("[Plaintiff's] allegations that . . .defendants threatened . . . foreclosure when they had no right to do so is nothing more than an attack on the state court judgment."); *Moncrief v. Chase Manhattan Mortg. Corp.*, 275 Fed. App'x. 149, 152-53 (3d Cir. 2008) (applying *Rooker-Feldman* even though plaintiff argued that defendants procured the foreclosure through "fraud"); *Ayres-Fountain v. E. Sav. Bank*, 153 Fed. App'x. 91, 92 (3d Cir. 2005) (concluding same); *see also Macintyre v. JP Morgan Chase Bank, N.A.*, 827 Fed. App'x. 812 (10th Cir. 2020) (holding that *Rooker-Feldman* applied where cause of action would require federal court to find that state court orders were fraudulently procured). To that extent, the fraud exception to *Rooker-Feldman*, if one exists at all, is exceedingly narrow under these circumstances. Where *Rooker-Feldman* has been found inapplicable, the plaintiff has sought money damages under a separate cause of action not available in the state court proceeding, not to vacate the foreclosure judgment, contrary to this case, where Farzan seeks a declaration that he has no obligations to Bayview. *See Goddard v. Citibank, N.A.*, No. 04-5317, 2006 WL 842925, at *6 (E.D.N.Y. Mar. 27, 2006).

Finally, as to the fourth *Rooker-Feldman* element, the question is whether Farzan asks this Court "to determine that the prior judgment was [in]correctly decided." *In re Sabertooth LLC*, 443

B.R. 671, 681 (Bankr. E.D. Pa. 2011); *see also Great Western*, 615 F.3d at 168-69. The nature of the relief Farzan seeks is critical. *In re Randall,* 358 B.R. 145, 155-56 (Bankr. E.D. Pa. 2006) ("[T]he relief sought (as opposed to the issues raised) by the federal plaintiff will be particularly significant.").

Farzan clearly attempts to "change the state court result" through this action. *In re Knapper*, 407 F.3d at 582 (quoting *In re Goetzman*, 91 F.3d 1173, 1177 (8th Cir. 1996)). The state court determined that Bayview owns the mortgage note even though J.P. Morgan lost it, Farzan owes Bayview over $500,000, and foreclosure proceedings may commence. *See* Def. Br. II, Ex. F ("ORDERED and ADJUDGED that [Bayview] is entitled to have the sum of $587,525.87 . . . to be raised in the first place out of the mortgaged premises."). Farzan asks this Court to vacate that judgment, permanently enjoin those proceedings, declare that he is not liable on the mortgage, and release him from obligations thereunder for reasons—fraud and forgery—which courts have consistently rejected. *See, e.g.*, Pl. Rep. Br., at 28-29 (describing various failed efforts to vacate the judgment, and writing that "I hope [this Court] reviews this case de novo"). "Implicit in the [state court's September 2019 order] was that court's determination that the Mortgage was valid," yet Farzan's Adversary Complaint "asks [me] to draw a different conclusion." *Thompson v. Ameriquest Mortg. Co.*, No. 03-3256, 2003 WL 22012207, at *3 (N.D. Ill. 2003); *In re Holler*, 342 B.R. 212, 221 (Bankr. W.D. Pa. 2006) (holding that, due to a state court foreclosure judgment, the court had no jurisdiction over a debtor's assertion that a mortgage assignment was invalid). Because Farzan attempts to undo the state court decision and produce the opposite outcome, it is "precisely what *Rooker-Feldman* prohibits." *In re Knapper*, 407 F.3d at 582; *Willoughby v. Zucker, Goldberg & Ackerman, LLC*, No. 13-7062, 2014 WL 2711177, at *4 (D.N.J. June 16, 2014) ("This type of action is exactly what *Rooker-Feldman* is meant to prevent: an attempt to

invalidate the final judgment of foreclosure . . . from a state court.").

## IV. CONCLUSION

Farzan lost in state court on the issue whether Bayview has standing to foreclose on his home. That resulted in a judgment entered before he filed his Adversary Complaint. The appeals period has long since expired, which ended the state proceedings for *Rooker-Feldman* purposes. Accordingly, the Court **AFFIRMS** the USBC's Order granting Defendants' Motion to Dismiss.

**DATED**: February 17, 2021                     /s/ Freda L. Wolfson
                                                  Hon. Freda L. Wolfson
                                                  U.S. Chief District Judge